UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

---

CEDRIC OTKINS, JR.,

    Plaintiff,

vs.

SERGEANT JACK GILBOY,
OFFICER BARRETT PEARSE,
OFFICER WILLIAM ROTH,
OFFICER JOSHUA DEROCHE, and
OFFICER JOHN DOE 1-10.

    Defendants.

CIVIL ACTION NO.: 21-cv-1275

JUDGE:

MAGISTRATE JUDGE:

COMPLAINT

*Jury Trial Demanded*

---

**NOW INTO COURT**, through undersigned counsel, comes Cedric Otkins Jr., a person of the full age of majority domiciled and residing in the Eastern District of Louisiana, who respectfully avers as follows:

## INTRODUCTION

1.

This is a civil rights action against Defendants Jack Gilboy, Barrett Pearse, William Roth, Joshua Deroche, and Deputy Officer John Doe of the St. Charles Parish Sheriff's Office. Cedric Otkins Jr., a twenty-seven-year-old Black man and resident of the Eastern District of Louisiana, seeks declaratory relief to redress an unconstitutional stop, search, and seizure.

2.

On July 1, 2020, Defendants targeted, stopped, and unreasonably detained Mr. Otkins in a public park for a frivolous or non-existent cause. Defendants then performed an unlawful search

of his vehicle, which ultimately resulted in jail time and criminal charges. Mr. Otkins continues to experience emotional and psychological harm as a result of the incident, including increased anxiety, sleeplessness, and nightmares.

3.

In the manner described herein, Defendants, acting under color of state law, acted without reasonable suspicion or probable cause under circumstances where no reasonable law enforcement officer would have believed that Mr. Otkins had engaged in any unlawful conduct warranting a prolonged detention or search of his vehicle. Defendants violated Mr. Otkins' Fourth Amendment right to be free from unreasonable searches and seizures under the United States Constitution. By this complaint, Mr. Otkins seeks judicial redress for violations of his civil rights due to the actions of the Defendants.

4.

Law-abiding citizens like Mr. Otkins have been unlawfully stopped, searched, and incarcerated, leaving them intimidated and humiliated when they have done nothing to warrant such treatment. Without accountability, law enforcement will continue to violate the rights of Black people, producing disastrous consequences.[1] Biases in policing leave Black Americans, and in particular young Black men, vulnerable to miscarriages of justice.[2] In this instance, Mr. Otkins seeks to hold the named officers accountable for the violation of his rights under the U.S. Constitution and Louisiana law.

---

[1] *See* Jamiles Lartey & Abbie VanSickle, *'Don't Kill Me': Others Tell of Abuse by Officer Who Knelt on George Floyd*, N.Y. TIMES (Feb. 2, 2021), https://www.nytimes.com/2021/02/02/us/derek-chauvin-george-floyd-past-cases.html.
[2] *See*, e.g., Frank Edwards, et al., *Risk of being killed by police use of force in the United States by age, race – ethnicity, and sex*, 116 PNAS 16793, 16794 (2019) (finding that Black men and boys face the highest lifetime risk of police violence).

## JURISDICTION AND VENUE

5.

Mr. Otkins' claims arise under the laws of the United States and Louisiana. This Court has jurisdiction over Mr. Otkins' claims for violations of the United States Constitution under 28 U.S.C. § 1343 and 28 U.S.C. § 1331.

6.

Venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391(a)(2) because all or a substantial part of the events that gave rise to this cause of action occurred in the Eastern District of Louisiana.

7.

Declaratory relief is authorized by 28 U.S.C. § 2201. A declaration of law is necessary to determine the respective rights and duties of the parties.

## PARTIES

8.

Plaintiff **Cedric Otkins, Jr.** is of suitable age and capacity to file this suit. At all times relevant herein, Mr. Otkins is, or was, a resident of the Eastern District of Louisiana and a citizen of the United States of America.

9.

Defendant **Jack Gilboy** is, or was, at all times relevant herein employed as a duly appointed and sworn sergeant for the St. Charles Parish Sheriff's Office and was at all times acting under the color of the State of Louisiana. He is sued in his individual capacity.

10.

Defendant **Barrett Pearse** is, or was, at all times relevant herein employed as a duly appointed and sworn deputy for the St. Charles Parish Sheriff's Office and was at all times acting under the color of the State of Louisiana. He is sued in his individual capacity.

11.

Defendant **William Roth** is, or was, at all times relevant herein employed as a duly appointed and sworn deputy for the St. Charles Parish Sheriff's Office and was at all times acting under the color of the State of Louisiana. He is sued in his individual capacity.

12.

Defendant **Joshua Deroche** is, or was, at all times relevant herein employed as a duly appointed and sworn deputy for the St. Charles Parish Sheriff's Office and was at all times acting under the color of the State of Louisiana. He is sued in his individual capacity.

13.

Defendant **Deputy Officer John Doe 1-10** is a yet unidentified person(s) of the full age of majority who, at all pertinent times, was an officer(s) employed by the St. Charles Parish Sheriff's Office acting under the color of the State of Louisiana. This defendant(s) is sued in his individual capacity.

14.

All Defendants are jointly and severally liable for the tortious conduct set forth below.

# FACTS

***The Unreasonable Detention of Mr. Otkins***

15.

At approximately 10:40 p.m. on July 1, 2020, Cedric Otkins, Jr. drove his 2018 Honda Civic to a restroom located in East Bank Bridge Park ("Park") to address an urgent medical need. East Bank Bridge Park is a public park located in Destrehan, Louisiana. The hours of operation posted online revealed that the Park was open to the public and remained open twenty-four (24) hours a day. Attached hereto as Exhibit A.

16.

At all times pertinent and relevant hereto, the premises of the Park provided no notice and no signage to indicate that it was closed to the public. There were no barriers that prevented Mr. Otkins' access to the Park and restroom. Further, law enforcement allowed motorists to leave their vehicles in the Park overnight, without consequence.

17.

Mr. Otkins, who was travelling alone, parked his vehicle in the well-lit parking lot adjacent to the restroom, walked several feet, and entered the restroom. Upon Mr. Otkins' entry into the Park, he also noticed a white sedan parked several feet away with its engine running.

18.

Within minutes, Mr. Otkins left the restroom and headed to his vehicle. As Mr. Otkins approached his vehicle, he noticed a police SUV bearing the insignia of the St. Charles Parish Sheriff's Department pulling into the parking lot. Mr. Otkins calmly entered his vehicle and turned on his vehicle's ignition to exit the Park.

19.

As Mr. Otkins placed his vehicle in the drive position, Defendant Jack Gilboy unexpectedly positioned his marked police SUV in a manner that blocked Mr. Otkins' ability to exit the parking lot. Although the SUV's emergency lights were not activated, Defendant Gilboy's action in positioning the SUV indicated that he had the express intent of committing an investigative stop.

20.

Mr. Otkins submitted to Defendant Gilboy's display of authority by placing his vehicle in the park position. Although not asked to do so, Mr. Otkins voluntarily opened his driver's side door and slowly exited the vehicle, leaving the car engine running with the car keys in the ignition. Upon exiting the vehicle, he closed his driver's side door with all windows rolled up. He stood at the rear of his vehicle and waited for Defendant Gilboy to exit the SUV and approach him. Mr. Otkins had only a cell phone and a cigarette lighter in his possession. At no point in time did Mr. Otkins have weapons or contraband on his person.

21.

Defendant Gilboy exited the police SUV and walked towards Mr. Otkins with his hands placed near his service weapon. As Defendant Gilboy approached Mr. Otkins, he yelled that the Park was closed due to a purported "curfew." Defendant Gilboy proceeded to walk past Mr. Otkins and use a flashlight to view the inside of Mr. Otkins' vehicle. Defendant Gilboy did not see or identify any illegal contraband in Mr. Otkins' vehicle.

22.

As Defendant Gilboy walked to the back of the vehicle towards Mr. Otkins, Mr. Otkins stated that he had only stopped briefly to use the Park's restroom and intended to leave the Park

immediately. Mr. Otkins also stated that the Park's hours of operation posted online were different from the hours Defendant Gilboy stated about the Park's closure.

23.

In response to Mr. Otkins' statement about the Park's hours, Defendant Gilboy prolonged the detention of Mr. Otkins with additional questioning. He demanded that Mr. Otkins produce his license and registration, which he then seized, ignoring Mr. Otkins' requests to be informed about the basis for his detention. For reasons unknown to Mr. Otkins, Defendant Gilboy escalated the stop when he radioed dispatch for backup.

24.

Defendant Gilboy had no independent reasonable suspicion to prolong the stop beyond the point at which Mr. Otkins stated that he intended to leave the Park. Consequently, all of the actions Defendants subsequently undertook were without probable cause or justification.

**The Unreasonable Search of Mr. Otkins' Vehicle**

25.

Defendants Pearse and Roth arrived at the scene as backup and continued the unwarranted interrogation of Mr. Otkins. Mr. Otkins again showed deference to Defendants and provided consistent responses to their extensive questioning about his Park visit and travel itinerary.

26.

Defendants manufactured an unjustified claim that Mr. Otkins was under the influence of a substance because he looked "worn out," "beat up," "drowsy," and appeared to be having "a rough day." During this exchange, Defendants made references to Mr. Otkins' race as they called Mr. Otkins "brother" on more than one instance. Defendants Pearse, Roth, and Gilboy made no mention of a marijuana odor emanating from Mr. Otkins or his vehicle. At no time during the

incident set forth herein did Defendants perform a field sobriety test. Furthermore, there is no evidence to confirm that Mr. Otkins was under the influence of drugs or alcohol.

27.

Defendants Pearce and Roth then asked Mr. Otkins for consent to search his vehicle, which Mr. Otkins refused. Again, Mr. Otkins asked if he was being detained and whether he was free to leave the premises. Defendant Roth replied that Mr. Otkins was not allowed to ask questions.

28.

It was during this exchange that Defendants, by their own admission, allowed the other motorist, who had been sitting nearby in the white sedan since Mr. Otkins' arrival, to exit the Park without consequence.

29.

Defendants stepped several feet away from Mr. Otkins and huddled in front of Defendant Gilboy's police SUV. During this huddle, one of Defendants expressed his wish to search Mr. Otkins' vehicle because of "the way he [*Mr. Otkins*] is acting."

30.

Defendants broke their huddle to inform Mr. Otkins that a K-9 unit was en route to search his vehicle because Defendant Gilboy allegedly smelled marijuana emanating from the vehicle. No indication was ever provided as to whether the alleged smell was fresh or burnt marijuana. The officers again asked Mr. Otkins for permission to search the vehicle, but Mr. Otkins declined to give consent. Defendants detained Mr. Otkins at least ten additional minutes while awaiting the arrival of the K-9 unit.

31.

Defendant Deroche, the K-9 officer, arrived at the scene accompanied with a purported drug-detection dog.  Defendant Deroche deployed the dog to sniff the exterior of Mr. Otkins' vehicle and claimed the dog alerted to the odor of a narcotic.  At the scene, however, Defendant Deroche stated on multiple occasions that he was unable to smell a marijuana odor emanating from the vehicle.

32.

Defendants placed Mr. Otkins in handcuffs and gave *Miranda* warnings.  Immediately after Mr. Otkins expressed his constitutional right to remain silent, Defendant Deroche verbally coerced Mr. Otkins to disclose that there was a legally purchased firearm located in the glove department of Mr. Otkins' vehicle.  Defendant Deroche then proceeded to the closed driver's side door of Mr. Otkins' vehicle and used his flashlight to look into the vehicle through the driver's side window.  Defendant Deroche identified a brown cigar near the vehicle's center console.  Defendants never deployed the dog to search the interior of Mr. Otkins' vehicle.

33.

Defendants then forcefully placed Mr. Otkins in the back of Defendant Roth's police car and proceeded to conduct an illegal search of Mr. Otkins' vehicle.  They rummaged through Mr. Otkins' personal items and all of the vehicle's compartments.

34.

The search of Mr. Otkins' vehicle was without probable cause because Mr. Otkins exited and closed his vehicle door before Defendant Gilboy got the opportunity to exit his police SUV. Mr. Otkins' vehicle door was open for only a matter of seconds such that it would be impossible for Defendant Gilboy to detect a marijuana odor emanating from the vehicle.  Defendant Gilboy

stood a considerable distance away from Mr. Otkins' vehicle at the time he claims to have smelled marijuana. Moreover, none of the other Defendants detected a marijuana odor prior to the illegal search of Mr. Otkins' vehicle. The Defendants unlawfully extended the stop in order to conduct a dog sniff without a basis for reasonable suspicion.

35.

As a result of the illegal search of the vehicle, Defendants retrieved Mr. Otkins' legally purchased firearm, the brown cigar, "green vegetable-like matter" totaling less than one-tenth of a pound, and other materials. During the search, Defendant Pearse said it would "be lovely if we can find a giant bag of dope" and hoped there was enough marijuana to charge Mr. Otkins with a felony. Defendants failed to find any giant bag of dope.

36.

Defendants transported Mr. Otkins to the St. Charles Parish Jail, where he remained in custody for hours until his release on bond.

***Status of Criminal Proceedings***

37.

Following processing, the St. Charles Parish District Attorney's Office charged Mr. Otkins with violations of La. R.S. §14:95 ("Illegal Carrying of a Weapon in the Presence of a Controlled Dangerous Substance"), La. R.S. §40:1023 ("Possession or Distribution of Drug Paraphernalia"), and La. R.S. §40:966 ("Possession with the Intent to Distribute"). Mr. Otkins was also charged with a violation of the Park's alleged "curfew," as well as an attachment stemming from a prior traffic court citation.

38.

In December 2020, Mr. Otkins accepted the District Attorney's offer to participate in a Pretrial Intervention Program. Mr. Otkins' entry into the District Attorney's Pretrial Intervention Program is not a conviction and does not bar Mr. Otkins' §1983 claim as there has been no judicial determination of Mr. Otkins' guilt.

39.

As a result of Defendants' above-described actions and conduct, Mr. Otkins suffered fear, fatigue, loss of appetite, humiliation, emotional trauma, and distress. He continues to suffer, and may permanently suffer from, anxiety, fear, and other symptoms of emotional trauma and distress including night terrors, sweats, depression, and insomnia.

## CAUSE OF ACTION

**42 U.S.C. §1983 — Unreasonable Search under the
Fourth Amendment of the U.S. Constitution**
(Against All Defendants)

40.

Mr. Otkins hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

41.

42 U.S.C. § 1983 provides that:

"Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . ."

42.

Defendants, acting under color of law and in concert with one another, searched Mr. Otkins' vehicle without probable cause that any violation or crime had been committed or was likely to be committed and seized his personal possessions in violation of the Fourth Amendment right against unreasonable searches. Defendants' actions give rise to Mr. Otkins' claims pursuant to the Fourth Amendment of the United States Constitution, 42 U.S.C. § 1983, and their counterparts in the Louisiana Constitution.

43.

Defendants searched Mr. Otkins' vehicle solely on the basis of Mr. Otkins' presence in the Park. The warrantless search was plainly unsupported by probable cause. Any reasonable police officer would know, or should have known, that Mr. Otkins had a clearly established constitutional right to be secure in his person from unreasonable search and seizure under the Fourth Amendment.

44.

The search was illegal because Defendants had no probable cause or reasonable suspicion to detain Mr. Otkins, to call for the dispatch of drug-detection canines, or to search the vehicle.

**CAUSE OF ACTION**

**42 U.S.C. §1983 — Unreasonable Seizure under the
Fourth Amendment of the U.S. Constitution**
(Against All Defendants)

45.

Mr. Otkins hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

46.

Defendants unreasonably prolonged the stop of Mr. Otkins without reasonable suspicion that any violation or crime had been committed or was likely to be committed. Defendants seized

his personal possessions in violation of the Fourth Amendment, and the investigatory stop was unreasonably prolonged beyond the point of what was objectively reasonable. Defendants' actions, which resulted in his subsequent arrest and detention at the St. Charles Parish Jail, deprived Mr. Otkins of a clearly established right secured to him under the United States Constitution.

47.

Defendants' acts were the direct and proximate cause of injury to Mr. Otkins. Defendants' acts were intentional and done in knowing violation of Mr. Otkins' legal and constitutional rights, without good faith, and with reckless disregard and/or callous indifference to Mr. Otkins' civil rights.

48.

In depriving Mr. Otkins of his rights under the United States Constitution, Defendants acted under color of law in their capacity as police officers for the St. Charles Parish Sheriff's Office. Defendants' actions and omissions were conducted within the scope of their official duties or employment. This deprivation under color of law is actionable under, and may be redressed by, 42 U.S.C. § 1983.

49.

Defendants are not entitled to qualified immunity for the complained of conduct because this conduct was objectively unreasonable and violated Plaintiff's clearly established constitutional rights.

**CAUSE OF ACTION**
**Louisiana Law — Intentional of Emotional Distress**
(Against All Defendants)

50.

Mr. Otkins realleges and incorporates all preceding paragraphs of his complaint.

51.

Mr. Otkins asserts that the Defendants violated Louisiana law by committing intentional torts, while acting within the scope of their employment of the St. Charles Parish Sheriff's Office.

52.

Defendants' above-described actions and conduct were extreme, outrageous, and beyond mere negligence.  Defendants intended for their conduct to cause Mr. Otkins severe emotional distress or knew that their conduct was certain or substantially certain to cause Mr. Otkins severe emotional distress.

53.

Mr. Otkins suffers from emotional distress, including, but not limited to, night terrors, sweats, depression, anxiety, fear, increased high blood pressure, headaches, nausea, vomiting, rashes, and/or insomnia.  The emotional distress Mr. Otkins has suffered has affected his personal relationships and day-to-day life.

54.

Defendants' unreasonable conduct unfairly swept Mr. Otkins into the criminal legal system, which has placed him under regular government monitoring and has required him to pay regular monetary fees.  Mr. Otkins' entry into a Pretrial Intervention Program has had consequences on his future enjoyment of life that cannot be understated.  Defendants should have known that their outrageous conduct would cause genuine and severe emotional distress to Mr. Otkins as he is a person of ordinary sensibilities.  These injuries have caused and will continue to cause Mr. Otkins pain and suffering, discomfort, and the loss of enjoyment of life.

## CAUSE OF ACTION
### Louisiana Law —Negligent Infliction of Emotional Distress
(Against All Defendants)

55.

Mr. Otkins realleges and incorporates all preceding paragraphs of his complaint.

56.

Mr. Otkins asserts that the Defendants violated Louisiana law by committing negligent torts, while acting within the scope of their employment of the St. Charles Parish Sheriff's Office. Defendants breach of their duty was a cause-in-fact of Mr. Otkins' severe emotional distress.

57.

Defendants owed Mr. Otkins a duty of care and breached that duty of care causing him harm within the scope of protection of the duty they owed him. Because of Defendants negligent acts and omissions, Mr. Otkins continues to suffer emotional injury and mental distress. Mr. Otkins further continues to suffer injuries such as depression, anxiety, increased high blood pressure, headaches, nausea, and/or insomnia.

58.

Defendants' negligent acts are the direct and proximate cause of the aforementioned injuries that Mr. Otkins has suffered. Defendants acted with reckless disregard for the consequences of their actions and omissions.

## **JURY DEMAND**

59.

Plaintiff requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**PRAYER FOR RELIEF**

60.

Mr. Otkins prays that this Court enter judgment for him and against each of the Defendants, finding that Defendants' conduct violates the Fourth Amendment of the United States Constitution and granting him all relief to which he is entitled at law, including but not limited to: a declaration that Defendants' conduct violates the Fourth Amendment of the United States Constitution; attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law; pre and post-judgment interest at the lawful rate; and any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

**WHEREFORE**, Plaintiff Cedric Otkins, Jr., respectfully prays that this Honorable Court enter judgment in his favor and against Defendants for all relief to which he is entitled as a matter of law, and that Defendants be held jointly, severally, and solidarily liable, and that all general and equitable relief be granted under federal and Louisiana law.

Dated: June 30, 2021

Respectfully Submitted,

*s/ Marcus B. Hunter*
JANIKA D. POLK, T.A. (Bar No. 27608)
MARCUS B. HUNTER (Bar No. 35177)
ALEASE SCOTT (Bar No. 37533)
MICHAEL HARRISON (Bar No. 38256)
**KUCHLER POLK WEINER, LLC**
1615 Poydras Street, Suite 1300
New Orleans, Louisiana 70112
Telephone: (504) 592-0691
Facsimile: (504) 592-0696
jpolk@kucherpolk.com
mhunter@kuchlerpolk.com
ascott@kuchlerpolk.com
mharrison@kuchlerpolk.com

and

Nora Ahmed (*Pro Hac Vice application pending*)
**AMERICAN CIVIL LIBERTIES UNION OF LOUISIANA**
P.O. Box 56157
New Orleans, Louisiana 70156
Telephone: (504) 522-0628
Facsimile: (504) 613-5611
nahmed@laaclu.org
*Attorneys for Plaintiff Cedric Otkins, Jr.*