## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CEDRIC OTKINS, JR.**                                    **CIVIL ACTION**

**VERSUS**                                                          **NO. 21-1275**

**SERGEANT JACK GILBOY, ET AL.**                **SECTION: D (1)**


## ORDER & REASONS

Before the Court is a Motion for Summary Judgment in Support of Qualified Immunity filed by Defendants Sergeant Jack Gilboy, Officer Barrett Pearse, Officer William Roth, and Officer Joshua Deroche, all of the St. Charles Parish Sheriff's Office (collectively "Defendants").[1] Plaintiff Cedric Otkins, Jr. ("Plaintiff") has filed an Opposition.[2] Defendants filed a Reply.[3] After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **GRANTS** the Defendants' Motion for Summary Judgment in Support of Qualified Immunity.

### I.    FACTUAL BACKGROUND

This case arises from the detention and subsequent search of Plaintiff Cedric Otkins, Jr.'s vehicle.  On the evening of July 1, 2020, shortly after 10:40 p.m., Defendant Sergeant Gilboy of the St. Charles Parish Sheriff's Office stopped Plaintiff in the parking lot of the East Bank Bridge Park (the "Park") in St. Charles Parish,

---

[1] R. Doc. 47.
[2] R. Doc. 49.
[3] R. Doc. 54.

Louisiana.[4]  The Park was closed at this time,[5] although the Plaintiff claims to have been unaware of the Park's hours of operation.[6]  Plaintiff allegedly noticed an SUV blocking his exit when he attempted to leave the Park;[7] unbeknownst to Plaintiff, the SUV was a police vehicle driven by Defendant Gilboy.[8]  Defendant Gilboy's SUV stopped approximately fifteen to twenty feet behind Plaintiff's vehicle.[9]  After seeing the SUV, Plaintiff exited his vehicle to further investigate.[10]  According to Plaintiff, it was not until he exited his vehicle that it became evident to him that the SUV was a police car.[11]  The parties contest the exact nature and timing of the events that followed.[12]

Both parties agree that Plaintiff exited his vehicle before Defendant Gilboy exited his.[13]  During his deposition, Plaintiff testified that he closed his car door immediately after exiting his vehicle and before Defendant Gilboy began approaching him.[14]  Plaintiff claims he then walked to the rear of his vehicle.[15]  Defendant Gilboy maintains that he closed the door of his police car and began approaching Plaintiff

---

[4] R. Doc. 47 at pp. 1–2; R. Doc. 49-1, *Deposition of Cedric Otkins* ("*Otkins Depo*.") at 15:10–16:9.

[5] *See* R. Doc. 47-1 at p. 2; St. Charles Parish Ordinance § 17-2 ("It shall be unlawful for any person to enter or be on or use any facilities in any public park within the parish from the hours of 10:00 p.m. through 5:00 a.m. each day of the week, or when the park is fenced, or locked and therefore, temporarily closed to the public.").

[6] *See* R. Doc. 49-1, *Otkins Depo*. at 18:2–25.

[7] *Id*. at 15:10–16:17.

[8] R. Doc. 49-2, *Deposition of Jack Gilboy* ("*Gilboy Depo*.") at 110:5–24.

[9] *Id*. at 46:7-16.

[10] R. Doc. 49-1, *Otkins Depo*. at 15:12–16.

[11] *Id*. at 15:12–18.

[12] There is no footage of the initial encounter, *see* R. Doc. 49-2, *Gilboy Depo*. at 135:6–9.  Testimony from Plaintiff and Defendant Gilboy's depositions are used to craft an outline of the events. All reasonable inferences are drawn in favor of Plaintiff.

[13] *Id*. at 51:15–22; R. Doc. 49 at p. 4; R. Doc. 49-1, *Otkins Depo*. at 15:12–16, 45:5–8.

[14] R. Doc. 49-1, *Otkins Depo*. at 45:1–46:10.

[15] *Id*. at 15:17–21.

approximately a second before Plaintiff closed his car door.[16]  Shortly after exiting his vehicle, when he was about three or four feet away from Plaintiff's vehicle, Defendant Gilboy claims to have first detected the odor of marijuana.[17]  Defendant Gilboy states that the closing of Plaintiff's car door fanned the odor towards him such that he was able to detect it.[18]  Defendant Gilboy claims that he could detect a "moderate" smell of marijuana that was "obvious, but not overwhelming."[19]   Plaintiff disputes Defendant Gilboy's claims; according to Plaintiff, his vehicle doors were shut and windows were fully up prior to Defendant Gilboy's approach, denying the officer an opportunity to smell the car's contents.[20]  Further, Plaintiff denies having smoked any marijuana that evening.[21]

Defendant Gilboy requested and took possession of Plaintiff's driver's license.[22] Defendant Gilboy returned to his police car, where he then radioed the police dispatch and requested that a canine unit be dispatched to the location.[23]  Defendant Gilboy further asserts that he called in a canine unit to detect the odor of contraband because he did not believe that the odor he smelled would still be detectable by back-up officers once they arrived on the scene.[24]  While waiting for the other officers, Defendant Gilboy conducted a computer check using the Plaintiff's driver's license, which

---

[16] R. Doc. 49-2, *Gilboy Depo.* at 51:23-52:11.
[17] *Id.* at 52:16–21.
[18] *Id.* at 112:17–113:12.
[19] *Id.* at 77:9–25.
[20] R. Doc. 49 at p. 19; R. Doc. 49-1, *Otkins Depo.* at 45:9–46:10.
[21] R. Doc. 49-1, *Otkins Depo.* at 77:20–22.
[22] R. Doc. 49-1, *Otkins Depo.* at 19:4–9.
[23] *Id.* at 22:11–21; R. Doc. 47-5, *Deposition of Jack Gilboy* ("*Gilboy Depo.*") at 36:10–23.
[24] *Id.* at 119:2–18.

revealed an outstanding attachment for the Plaintiff's arrest.[25]  Once they arrived on the scene approximately three minutes after the initial stop,[26] Defendants Roth and Pearse approached Defendant Gilboy and spoke with him.[27]  It is about this time that Defendant Gilboy's dash-camera began filming; this is the only video evidence from the encounter.[28]

Several minutes later, Defendants Roth and Pearse told Plaintiff that Defendant Gilboy reportedly smelled an odor of marijuana emanating from his car.[29] Defendants asked Plaintiff if they could search his vehicle which he declined.[30] Defendants informed Plaintiff that a drug detection dog would be deployed to sniff the exterior of the vehicle.[31]

Defendant Deroche arrived on scene with the drug detecting canine unit approximately ten minutes after the initial encounter began.[32]  Following a positive alert from the drug detection dog, and Defendant Deroche's viewing of a suspected marijuana cigar in plain view in Plaintiff's car,  Plaintiff was advised of his rights and arrested.[33]  The arrest occurred approximately eleven minutes after the filming

---

[25] *Id*. at 36:7–9.  The attachment was for an unpaid ticket for a broken license plate light.  R. Doc. 49-1, *Otkins Depo*. at 78:16–22.

[26] The Command Log reflects that Defendants Roth and Pearse arrived on scene at 10:50:21 p.m., around three minutes after the initial stop.  *See* R. Doc. 49-11 at p. 5.

[27] *Id*. at 24:15–18.

[28] R. Doc. 47-3.

[29] R. Doc. 49-1, *Otkins Depo*. at 26:20–24, 28:14–17.

[30] *Id*. at 27:6–11.

[31] *Id*. at 27:12–18; R. Doc. 49-4, Deposition of William Roth ("*Roth Depo*.") at 44:8–9.

[32] The police Command Log confirms that Gilboy's initial call of the suspicious vehicle was at 11:47:54 p.m. and Defendant Deroche arrived on scene at 10:56:49 p.m.  *See* R. Doc. 49-11 at p. 5.  Plaintiff alleges that it seemed like thirty minutes had passed before Defendant Deroche arrived.  R. Doc. 49-1, *Otkins Depo*. at 47:2–15, 50:6–19.  Defendant Gilboy alleges that it took approximately eight minutes from the initial stop until the K-9 arrived.  R. Doc. 49-2, *Gilboy Depo*. at 79:4–20.

[33] R. Doc. 49-1, *Otkins Depo*. at 15:10-16:9; R. Doc. 49-4, *Roth Depo*. at 44:3–21, 88:6–20; R. Doc. 47-3 at 11:16–11:22; R. Doc. 49-7 at p. 2.

of the encounter began.[34]  The search of Plaintiff's car revealed twenty grams of marijuana, including a brown hand rolled marijuana cigar, a firearm, and drug paraphernalia including a glass smoking pipe, a grinder, and a digital scale with green vegetable-like matter.[35]  The time from the initial encounter until Plaintiff's arrest is approximately 15 minutes.[36]  The St. Charles Parish District Attorney's Office subsequently charged Plaintiff with violations of La. R.S. 14:95 ("Illegal Carrying of a Weapon in the Presence of a Controlled Dangerous Substance"), La. R.S. 40:1023 ("Possession or Distribution of Drug Paraphernalia"), and La. R.S. 40:966 ("Possession with the Intent to Distribute").[37]

Plaintiff filed this suit on June 30, 2021, asserting a cause of action against each of the Defendants in their individual capacity pursuant to 42 U.S.C. § 1983 for violation of his Fourth Amendment right to be free from unlawful searches and seizures.[38]  Defendants filed an Answer, asserting sixteen affirmative defenses, including qualified immunity.[39]

On January 10, 2022, this Court issued a Qualified Immunity Scheduling Order, limiting discovery to the issue of Defendants' affirmative defense of qualified immunity and requiring Defendants to file any motions to dismiss or motions for

---

[34] R. Doc. 47-3 at 11:00; R. Doc. 49-1, *Otkins Depo*. at 66:21–67:5.
[35] R. Doc. 49-7 at p. 2.
[36] The Command Log reflects that Defendant Gilboy arrived and reported the encounter at 10:47:54 p.m., back-up Sheriffs Pearse and Roth arrived at 10:50:21, and the canine unit arrived at 10:56:49. *See* R. Doc. 49-11 at p. 5.
[37] R. Doc. 49-7 at p. 2.  Plaintiff testified that these charges were dismissed pursuant to a Pretrial Intervention plea.  R. Doc. 49-1, *Otkins Depo*. at 83:2–16.
[38] R. Doc. 1.
[39] R. Doc. 15.

summary judgment on their qualified immunity defense by April 25, 2022.[40]  The Defendants timely filed the instant Motion for Summary Judgment on April 25, 2022.[41]  Defendants argue that they are entitled to summary judgment on their claim of qualified immunity because they did not violate the constitutional rights of Plaintiff.[42]  Defendants allege that there is no genuine dispute of material fact here and that the Defendants did not unconstitutionally prolong the traffic stop of Plaintiff because Defendants possessed probable cause to extend the stop until the canine unit arrived and to search Plaintiff's vehicle.[43]

Plaintiff filed a response in opposition to Defendants' Motion, arguing that the "prolonged detention" of Plaintiff violated clearly established law and that the presence of factual disputes makes summary judgment inappropriate at this stage.[44] Specifically, Plaintiff argues that "[a]bsent any smell of marijuana, Defendant Gilboy would not have had the requisite reasonable suspicion to prolong his stop of Mr. Otkins, which ended when Defendant Gilboy elected not to arrest Mr. Otkins for an outstanding attachment relating to an unpaid ticket for a broken license plate light."[45]  Plaintiff also disputes that Defendant Gilboy could have smelled the marijuana.  In support of that argument, Plaintiff contends that he had already exited his vehicle and closed the door and further references, and includes as an

---

[40] R. Doc. 34.
[41] R. Doc. 47.
[42] R. Doc. 47-1 at p. 1.
[43] *Id.* at pp. 13–14.
[44] R. Doc. 49 at pp. 1–2.
[45] *Id.* (citing *Otkins Depo.* at 78:16–22).

attachment, a 2004 article entitled "Marijuana Odor Perception: Studies Modeled From Probable Cause Cases."[46]

In their Reply, Defendants argue that Plaintiff's opposition raises irrelevant matters instead of addressing whether defendants are entitled to Qualified Immunity.[47] Defendants further point out that "there is absolutely no evidence that Sgt. Gilboy elected not to arrest Mr. Otkins on the outstanding attachment, something Sgt. Gilboy discovered *after* detecting the odor of marijuana and *after* his decision to contact a K-9 officer to confirm his probable cause to search the vehicle" contrary to Plaintiff's assertion that Gilboy "elected not to arrest Mr. Otkins for an outstanding attachment."[48] Defendants argue that it is illogical, and has not been disputed through competent evidence, that this fact was discovered by Sgt. Gilboy after the detection of the marijuana odor.[49] Defendants also object to or move to strike Plaintiff's article on "Marijuana Odor Perception" as inadmissible hearsay, unreliable, and not in compliance with the Court's Qualified Immunity Scheduling Order.[50] Finally, Defendants again assert that the officers did not violate a clearly established constitutional right and are thus entitled to Qualified Immunity.

## II.    LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the

---

[46] *Id*. at p. 22.
[47] R. Doc. 54.
[48] *Id*. at pp. 2–3.
[49] *Id*.
[50] *Id*.

movant is entitled to judgment as a matter of law."[51]  A dispute is "genuine" if it is "real and substantial, as opposed to merely formal, pretended, or a sham."[52]  Further, a fact is "material" if it "might affect the outcome of the suit under the governing law."[53] When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[54]   While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[55]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[56]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[57]  The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the

---

[51] Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

[52] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).

[53] *Liberty Lobby*, 477 U.S. at 248.

[54] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).

[55] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).

[56] *Delta & Pine Land Co.*, 530 F.3d at 399 (citing *Liberty Lobby*, 477 U.S. at 248).

[57] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991).

reasonable fact-finder to return a verdict in favor of the moving party."[58]  If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[59]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[60]

"A qualified immunity defense alters the usual summary judgment burden of proof."[61]  "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law."[62]  However, when considering a qualified immunity defense, the court must still view the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmoving party's favor.[63]

## III.   ANALYSIS

Title 42 U.S.C. § 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law.   Specifically, § 1983 provides that:

---

[58] *Id*. at 1265.

[59] *See Celotex*, 477 U.S. at 322–23.

[60] *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)).

[61] *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

[62] *Id.*

[63] *Rosado v. Deters*, 5 F.3d 119, 122–23 (5th Cir. 1993).

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.[64]

Because § 1983 merely provides a remedy for designated rights without creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[65]  To establish § 1983 liability, the plaintiff must establish the following three elements: (1) deprivation of a right secured by the United States Constitution or federal law; (2) by a state actor; (3) that occurred under color of state law.[66]

As a defense to § 1983 claims, government officials may invoke qualified immunity, which shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[67]  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[68]  The Supreme Court has made clear that qualified immunity functions as an immunity from suit, rather than a mere defense to liability.[69]  "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by

---

[64] 42 U.S.C. § 1983.
[65] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[66] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).
[67] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
[68] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).
[69] *Id.* at 237 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (internal quotation marks omitted)).

protecting 'all but the plainly incompetent or those who knowingly violate the law.'"[70] "This means that even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity."[71]  Once the government official asserts the defense of qualified immunity, the burden shifts to the plaintiff to negate the defense.[72]

To overcome a claim of qualified immunity, a plaintiff must demonstrate: (1) that the official violated a statutory or constitutional right; and (2) that the right was "clearly established" at the time of the challenged conduct.[73]  Put differently, a government official's liability "generally turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken."[74]  It is up to the district courts' discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case.[75]  However, because the Court, for the reasons discussed herein, finds that the Defendants did not violate the Fourth Amendment rights of Plaintiff, the Court need not address whether such rights were clearly established.

---

[70] *Brumfield v. Hollins*, 551 F.3d 322, 326–27 (5th Cir. 2008) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)).

[71] *Bazan*, 246 F.3d at 488 (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001) (internal quotation marks omitted)).

[72] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

[73] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).

[74] *Anderson*, 483 U.S. at 639.

[75] *Pearson*, 555 U.S. at 236.

## A. Violation of a Constitutional Right

Defendants assert that they are entitled to qualified immunity because Plaintiff cannot demonstrate that his rights were violated by Defendants. In his § 1983 claim, Plaintiff alleges that Defendants violated his Fourth Amendment rights to be free from unreasonable search and seizure.[76] Specifically, Plaintiff argues that his "prolonged detention, which resulted in the search of his vehicle, violated clearly established Fourth Amendment case law."[77] Plaintiff maintains that his rights were violated because:

> (1) Defendant Gilboy, upon learning of the attachment for [the Plaintiff], could have arrested him or was otherwise obligated to stop the detention and let [the Plaintiff] go; (2) logistically, Defendant Gilboy could not have smelled marijuana and, for this very reason, was incapable of describing what it purportedly smelled like (*i.e.*, fresh or smoked); (3) Defendant Gilboy and the other Defendants do not articulate any factors supporting reasonable suspicion to prolong the detention of [the Plaintiff] so that a canine unit could arrive and perform a sniff test of his car.[78]

Plaintiff contends that the Defendants' actions give rise to his claims pursuant to the Fourth Amendment of the United States Constitution, 42 U.S.C. § 1983, and their counterparts in the Louisiana Constitution.

Traffic stops must be justified by reasonable suspicion under the Fourth Amendment.[79] The stop must be "(1) 'justified at its inception'; and (2) 'reasonably related in scope to the circumstances which justified the inference in the first

---

[76] R. Doc. 1 at pp. 11–12.
[77] R. Doc. 1 at ¶¶ 30, 40.
[78] R. Doc. 49 at pp. 1–2.
[79] *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005).

place.'"[80]  Under the second requirement, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."[81]  At this stage, "the relevant question in assessing whether a detention extends beyond a reasonable duration is 'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicion quickly.'"[82]

During a stop, an officer may "examine the driver's license and registration," "run a computer check," and "ask the driver about the purpose and itinerary of his trip."[83]  Although this "inquiry may be wide-ranging, once all relevant computer checks have come back clean, there is no more reasonable suspicion," and the stop must end unless "additional reasonable suspicion arises . . . before the initial purpose of the stop has been fulfilled."[84]  The reasonable suspicion standard "falls considerably short of satisfying a preponderance of the evidence standard" and instead looks to whether the "totality of the circumstances" creates a reasonable suspicion of criminal activity.[85]  Absent reasonable suspicion, the police may not extend an otherwise completed traffic stop to conduct a canine sniff of the vehicle or take any other investigatory action.[86]  "A seizure justified only by a police-observed

---

[80] *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968)).

[81] *Id.* (quoting *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc)).

[82] *United States v. Brigham*, 382 F.3d 500, 511 (5th Cir. 2004) (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)); *accord United States v. Young*, 816 Fed. Appx. 993, 996 (5th Cir. 2020).

[83] *Lopez-Moreno*, 420 F.3d at 430–31.

[84] *Id.* at 431.

[85] *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

[86] *See Rodriguez v. United States*, 575 U.S. 348, 357 (2015); *see also* Louisiana Code of Criminal Procedure article 215.1(D) ("[A]n officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity.").

traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation."[87] Conversely, it follows that police may lawfully extend a traffic stop if the officer develops reasonable suspicion or probable cause that a crime has occurred or is occurring beyond that which justified the original traffic stop.[88]

Plaintiff concedes that the initial stop of his vehicle by Sergeant Gilboy was lawful.[89]  Plaintiff's car was located in the Park during restricted hours, in violation of a local ordinance, giving Defendant Gilboy reasonable suspicion to make the initial stop.[90]  The sole issue in this case, then, is whether Defendants unlawfully prolonged the traffic stop beyond its intended purpose.

Here, Plaintiff contends that once Defendant Gilboy completed his computer check on Plaintiff, and subsequently found out about Plaintiff's outstanding attachment, the initial purpose of the stop was completed and therefore, the time spent waiting for the canine unit to arrive was an impermissible prolongment of the traffic stop.[91]  The Court disagrees.  A law enforcement officer violates the Fourth

---

[87] *Rodriguez*, 575 U.S. at 350–51 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)).

[88] *See State v. Carter*, 2020-01193 (La. 1/26/21), 309 So.3d 333, 337 ("If the officer develops reasonable suspicion of criminal activity, he may further detain the individual while he diligently pursues a means of investigation likely to quickly confirm or dispel the particular suspicion." (citing *Sharpe*, 470 U.S. at 686)).  This is not to say that once an officer develops reasonable suspicion or probable cause independent of that which justified the initial stop there are no limits to the duration or scope of the officer's search.  Indeed, that would be an incorrect statement of law.  *See Sharpe*, 470 U.S. at 685. However, as this case deals only with the question of whether such reasonable suspicion existed to justify the prolonging of the stop to call in the canine unit, the Court need not address the extent of the limits assuming reasonable suspicion exists.  Moreover, Plaintiff provides no argument that a Fourth Amendment violation occurred if Defendants possessed reasonable suspicion or probable cause based on the detection of marijuana odor.

[89] *See* R. Doc. 49 at p. 1.

[90] *See id.* at pp. 1, 3; St. Charles Parish Ordinance § 17-2.

[91] Notably, Plaintiff concedes that Defendant Gilboy could have arrested him as soon as he discovered Plaintiff's attachment.  *See* R. Doc. 49 at pp. 21–22.

Amendment when he, acting *without* reasonable suspicion, unreasonably prolongs a traffic stop to conduct a dog sniff.[92]  However, officers may prolong investigatory stops to allow a canine to conduct a sniff of a vehicle when the officer has reasonable suspicion of criminal activity.[93]  The Court determines that Defendant Gilboy, for the reasons to be discussed, had reasonable suspicion to extend the traffic stop and take the investigatory steps he took as soon as he smelled the odor of marijuana emanating from Plaintiff's vehicle.  Accordingly, no violation of Plaintiff's Fourth Amendment rights occurred.

### 1.  There Is No Genuine Dispute of Material Fact

The law in Louisiana and in this Circuit is clear: the odor of marijuana provides probable cause to search an automobile without a warrant.[94]  Plaintiff does not dispute this.  Instead, Plaintiff's sole argument is a factual one—Plaintiff contends that Defendant Gilboy did not actually smell any marijuana, thus he lacked both reasonable suspicion and probable cause to prolong the stop for the dog sniff and subsequent search of Plaintiff's vehicle.[95]  Plaintiff, as discussed above, maintains that Defendant Gilboy could not have smelled any marijuana coming from Plaintiff's

---

[92] *See Rodriguez*, 575 U.S. at 357.

[93] *See id.*; *see also*, *supra*, n.83.

[94] *United States v. Lork* is almost directly on point with the facts of this case.  132 Fed. Appx. 34 (5th Cir. 2005).  There, the Fifth Circuit held that "a detectable odor of marijuana emanating from a vehicle provides probable cause for the search of a vehicle." *Id.* at 35–36.  Further, "[b]ecause the police officer testified that he detected [marijuana] odor immediately upon approaching [the defendant's] vehicle [during the traffic stop], any questions regarding the length of detention or consent to the search are irrelevant." *Id.*  Although this case is not precedential, the Court nevertheless finds it highly persuasive. *See also*, *e.g.*, *United States v. Garza*, 539 F.2d 381, 381 (5th Cir. 1976) (citing *United States v. Coffey*, 520 F.2d 1103 (5th Cir. 1975)) ("[T]he odor of marijuana emanating from the vehicle gave the officer probable cause to conduct the search); *State v. Lacrosse*, 2020 WL 88838, at *3 (La. App. 5 Cir. 1/7/20) (smell of marijuana provided the officer with sufficient probable cause to conduct a warrantless search of the entire car, including the trunk and backpack in the trunk).

[95] R. Doc. 49 at p. 22.

car and argues that this factual dispute is sufficient to defeat Defendants' summary judgment motion.[96]

Plaintiff's claims rely on his recollection of the events during the stop. According to Plaintiff, his car doors and windows were fully sealed before Defendant Gilboy exited his police vehicle at the outset of the investigatory stop.[97]   Indeed, Plaintiff's sole argument in disputing whether Defendant Gilboy smelled marijuana coming from his vehicle is that his car doors were closed and his windows were rolled up by the time that Defendant Gilboy approached his car; neither contention is disputed by Defendants.  Plaintiff specifically focuses on the contested fact that his car door was shut before Defendant Gilboy exited his police vehicle at the beginning of the investigatory stop.[98]   Plaintiff contends that because Defendant Gilboy maintains that Plaintiff closed his car door *after* Defendant Gilboy had exited his police vehicle, this factual dispute is sufficient to defeat summary judgment.[99]  But not every factual dispute in a case necessarily makes summary judgment inappropriate.  As made clear by Fed. R. Civ. P. 56 and Supreme Court caselaw, only *genuine* disputes of *material* fact can defeat an otherwise valid summary judgment motion.[100]  A party may not defeat summary judgment by conjuring up alleged factual disputes or by declaring by fiat that such disputes exist.  Here, the material fact in issue is whether Defendant Gilboy smelled marijuana emanating from Plaintiff's

---

[96] *Id.*
[97] *Id.* at p. 19.
[98] *Id.*
[99] *Id.* ("There is conflicting testimony as to the manner and timing of Defendant Gilboy's and Mr. Otkins' exit from their vehicles . . . [t]hus, there are two contradictory accounts that call into question Defendant Gilboy's articulation of events.").
[100] Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 322; *Liberty Lobby*, 477 U.S. at 247.

car—not the exact timing of door openings and closings.  Thus, Plaintiff must produce competent summary judgment evidence suggesting that Defendant Gilboy did not smell any marijuana when he stopped Plaintiff.  Plaintiff has failed to do so.

Plaintiff greatly exaggerates the extent to which there is a dispute over the facts surrounding the initial moments of the interaction between he and Defendant Gilboy.  Put differently, Plaintiff's dispute is not "genuine."[101]  Both parties agree that Plaintiff was the first to exit his vehicle and that Defendant Gilboy was parked approximately fifteen to twenty feet behind Plaintiff's vehicle.[102]  Plaintiff asserts that "he left his vehicle, closed his driver's side door and walked towards the rear quarter panel of his Honda vehicle *all before* Defendant Gilboy departed from his marked police SUV, parked 15–20 feet."[103]  Plaintiff contrasts this account of the events with that of Defendant Gilboy, who claims to have closed his door approximately a second after Plaintiff had closed his.[104]  However, the deposition testimony cited by Plaintiff to support this alleged discrepancy is not quite so clear.  In his deposition, Plaintiff stated that his door was fully closed before Defendant Gilboy *approached* him at the back of his vehicle, not necessarily that he closed his car door before Defendant Gilboy exited  his police car and closed his door.[105]  Moreover, as explained below, to the extent that there is a legitimate dispute as to

---

[101] A "genuine" dispute must be "real and substantial, as opposed to merely formal, pretended, or a sham."  *Bazan*, 246 F.3d at 489 (citing *Wilkinson*, 149 F.2d at 337).
[102] R. Doc. 49-2, *Gilboy Depo.* at 51:15–22; R. Doc. 49 at p. 4; R. Doc. 49-1, *Otkins Depo.* at 15:12–16, 45:5–8.
[103] R. Doc. 49 at p. 19.
[104] *Id.* at pp. 19–20; R. Doc. 49-2, *Gilboy Depo.* at 51:23–52:11.
[105] R. Doc. 49-1, *Otkins Depo.* at 46:6–10.

the exact point in time that the vehicle doors of both Plaintiff and Defendant Gilboy shut, such dispute is immaterial and does defeat summary judgment.

Plaintiff's arguments concerning this alleged dispute also miss the mark for failing to even draw into question Gilboy's testimony that he smelled the odor of marijuana. Whether Plaintiff's car door was still open for a second when Defendant Gilboy exited his vehicle,[106] or whether Defendant Gilboy could determine whether the odor was from fresh or smoked marijuana,[107] is simply insubstantial to the question of whether Defendant Gilboy actually did smell marijuana as he approached Plaintiff's vehicle. So, too, is the dispute over whether the marijuana cigar found in Plaintiff's vehicle was located in the cupholder or in the "cubby hole area underneath the radio."[108] Plaintiff's argument, unsupported by any evidence, is that whatever marijuana odors present in his car that would have escaped as he opened his car door had dissipated by the time Defendant Gilboy approached his vehicle. But Plaintiff has not met his burden in demonstrating that the factual dispute here, which implicates only the exact timing within seconds that Defendant Gilboy approached Plaintiff's vehicle after the door has been closed, somehow generates a genuine dispute as to whether Defendant Gilboy smelled marijuana.

To support his claim that Defendant Gilboy did not smell any marijuana, Plaintiff cites several studies which purportedly demonstrate that individuals cannot detect the odor of sealed, plastic bags of marijuana from outside of a vehicle.[109] Even

---

[106] R. Doc. 49-2, *Gilboy Depo.* at 51:23–52:11.
[107] *See* R. Doc. 49 at p. 19.
[108] *Id.* at p. 20.
[109] *See* R. Doc. 49 at pp. 6, 20; R. Doc. 49-10.

if the Court were to presume the accuracy of these studies,[110] they do not dictate, as Plaintiff suggests, that "the quantity and state of the alleged marijuana at issue here could not have been detected by a human nose."[111]   Plaintiff has not provided any reason why the laboratory studies are directly applicable to the present facts and circumstances here.   That random participants in one study could not smell marijuana in one circumstance does not broadly suggest that in the circumstances in the instant case, Defendant Gilboy, who possesses experience with the odor of marijuana,[112] did not smell marijuana.  Further, unlike the scenarios manufactured for the studies, Plaintiff's vehicle contained more than simply marijuana packaged in plastic bags; his car also contained a marijuana cigar, a marijuana grinder, a scale with marijuana residue, and a glass smoking pipe.[113]   Plaintiff's cited medical study is simply inapplicable to the present facts.  Moreover, it strains credulity to suggest that an officer is unable to detect the odor of marijuana from a vehicle whose door was recently opened and shut and that does, in fact, contain marijuana.

It is undisputed that, regardless of exactly when Plaintiff's car door was shut, when Defendant Gilboy approached Plaintiff's car, a car containing marijuana and marijuana paraphernalia, the car door had been open shortly before Defendant approached, thus allowing an opportunity for any odors to escape.  Further, there is

---

[110] Insofar as Plaintiff would have the Court take judicial notice of these studies, *see* R. Doc. 49 at p. 6 n.2, the Court finds it inappropriate to do so.  Findings in a study such as this are neither generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  *See* Fed. R. Evid. 201(b).

[111] R. Doc. 49 at p. 20.

[112] *See, e.g.*, R. Doc. 47-5, *Gilboy Depo.* at 149:12–150:6.

[113] *See* R. Doc. 49-7 at p. 2.

no dispute that Plaintiff's car door was shut and his windows were rolled up by the time Defendant Gilboy was within several feet of Plaintiff's vehicle when he first claims to have smelled the marijuana.[114]  Even if Plaintiff's claims are true that he closed his door before Defendant Gilboy closed his, that does not negate Defendant Gilboy's contention that the closing of Plaintiff's door allowed the marijuana odor to escape Plaintiff's car and wafted the odors towards him.  Defendant Gilboy, contrary to Plaintiff's insinuation, does not claim to have smelled the marijuana through Plaintiff's sealed vehicle; rather, Defendant Gilboy maintains that he smelled the odors that emanated from the car after Plaintiff exited his vehicle.  Further, and again contrary to Plaintiff's suggestion,[115] Defendant Gilboy does not claim that he either saw or smelled marijuana smoke coming from Plaintiff's car.  The Court does not find it reasonable to believe that the marijuana odors, which would have escaped the car with the opening and closing of Plaintiff's driver-side door, entirely dissipated within the matter of seconds from when Defendant Gilboy exited his vehicle to when he walked ten to fifteen feet towards Plaintiff's car. Because the Court finds that under either set of facts Defendant Gilboy had an opportunity to smell marijuana, there is no genuine dispute of material fact here.  In other words, Plaintiff's mere *ipse dixit* that Defendant Gilboy did not smell any marijuana is insufficient to defeat a summary judgment motion.

---

[114] R. Doc. 49-2, *Gilboy Depo.* at 57:3–7.
[115] *See* R. Doc. 49-9 ("Because I was not smoking marijuana, no smoke emanated from the car door when I opened it.").

Further, while all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions or "only a scintilla of evidence."[116]   For example, Plaintiff cannot demonstrate a genuine issue of material fact merely by summarily asserting, as he does, that Defendant Gilboy did not smell any marijuana.[117]   Nor, for that matter, can Plaintiff demonstrate a genuine factual dispute by alleging that, under the circumstances, Defendant Gilboy likely could not have smelled marijuana.[118]   Plaintiff's speculation about what Defendant Gilboy smelled or was capable of smelling is insufficient to create a genuine issue of material fact.[119]

Plaintiff has provided no competent summary judgment evidence sufficient to establish a genuine dispute that Defendant Gilboy detected the odor of marijuana as he approached Plaintiff's car.  Any factual dispute over the timing of when Defendant exited his vehicle—whether before or after Plaintiff had closed his own car door—does not create a genuine dispute of material fact regarding whether Defendant in fact smelled marijuana.  Nor do the other points and issues raised by Plaintiff "establish the . . . presence of a genuine dispute."[120]   Accordingly, the Court finds

---

[116] *Delta & Pine Land Co.*, 530 F.3d at 398–99 (quoting *Little*, 37 F.3d at 1075) (internal quotation marks omitted).  Plaintiff argues throughout his Opposition that the Court must assume his version of events to be true.  *See* R. Doc. 49 at p. 20.  That is an incorrect statement of the applicable law.  At summary judgment, while the Court must construe all inferences in favor of the non-moving party, *i.e.*, Plaintiff, the Court does not presume Plaintiff's well-pled allegations to be true as it does at the dismissal stage.
[117] *See id.* at p. 19.
[118] *See id.* at pp. 19–20.
[119] *See Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009).
[120] Fed. R. Civ. P. 56(c)(1)(B).

there to be "no genuine dispute as to any material fact" and will thus next address whether Defendants are entitled to judgment as a matter of law.

### 2. Defendants Did Not Violate Plaintiff's Constitutional Rights

The resolution of this case is straightforward. As mentioned earlier, the smell of marijuana provides probable cause to search a vehicle.[121] Defendants, for the aforementioned reasons, have demonstrated that there is no genuine dispute that Defendant Gilboy smelled the odor of marijuana as he approached Plaintiff's car. Accordingly, it follows that upon Defendant Gilboy's detection of marijuana, Defendant Gilboy possessed probable cause to search Plaintiff's car. Further, because Plaintiff's Fourth Amendment claim for unlawfully prolonging a traffic stop requires an officer to, *without reasonable suspicion*, extend the duration of a traffic stop beyond its original scope,[122] it necessarily follows that because Defendants possessed reasonable suspicion, there was no Fourth Amendment violation.[123] Moreover, the time by which the stop was prolonged for the canine unit to arrive—at most several minutes[124]—was reasonable under the circumstances.[125]

---

[121] *See, supra,* n.89.

[122] *Rodriguez*, 575 U.S. at 350–51.

[123] *See, e.g., Lork*, 132 Fed. Appx. at 35 ("Because the police officer testified that he detected [marijuana] odor immediately upon approaching [the defendant's] vehicle [during the traffic stop], any questions regarding the length of detention or consent to the search are irrelevant.").

[124] The Command Log reflects that the initial encounter between Defendant Gilboy and Plaintiff began at 10:47:54 p.m. and that Defendant Deroche arrived at 10:56:49 p.m. R. Doc. 49-11 at p. 5. Defendant Gilboy ran Plaintiff's Driver's License information at 10:51:24. *Id.* Accordingly, at most five minutes passed between when the reasons for the initial traffic stop ended and when the canine unit arrived.

[125] *See Carter*, 309 So.3d 333, 337 ("If the officer develops reasonable suspicion of criminal activity, he may further detain the individual while he diligently pursues a means of investigation likely to quickly confirm or dispel the particular suspicion." (citing *Sharpe*, 470 U.S. at 686)).

Because the Court finds that the Defendants possessed probable cause to search Plaintiff's vehicle as soon as Defendant Gilboy detected the odor of marijuana emanating from Plaintiff's vehicle, the Court need not address Plaintiff's other contentions that, *inter alia*, Defendants are unable to articulate other factors to support reasonable suspicion for the prolonged stop or that Plaintiff's refusal to consent to search did not provide reasonable suspicion to prolong his detention.[126] Moreover, nothing in the record points to the Defendants justifying their stop and subsequent search of Plaintiff on any grounds other than Detective Gilboy's olfactory detection of marijuana and the subsequent positive alert from the canine sniff.[127]

In sum, for the reasons stated, the Court does not find that the Defendants' conduct was illegal here. There was no Constitutional violation, and the officers' conduct remained reasonable throughout the entire encounter. Thus, qualified immunity is warranted.

## B. Existence of a Clearly Established Right & Objective Legal Reasonableness

Because the Court holds that there was no violation of a Constitutional right, the Court need not address whether the Defendant's conduct was objectively legally reasonable "assessed in light of the legal rules that were 'clearly established' at the time it was taken."[128]

---

[126] R. Doc. 49. at pp. 22–25.
[127] Plaintiff does not contest that the search of his vehicle and his subsequent arrest would be justified assuming the Officers had reasonable suspicion to prolong the stop for the canine unit to arrive. Further, the Court need not address whether Defendant Gilboy could have or intended to arrest Plaintiff on the outstanding attachment, the fact of which is uncontested by either party.
[128] *Anderson*, 483 U.S. at 639.

## IV.     CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment in Support of Qualified Immunity[129] filed by Defendants Sergeant Jack Gilboy, Officer Barrett Pearse, Officer William Roth, and Officer Joshua Deroche is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's 42 U.S.C. § 1983 claims against the Defendants are **DISMISSED, with prejudice.**

New Orleans, Louisiana, October 27, 2022.


**WENDY B. VITTER**
**United States District Judge**

---

[129] R. Doc. 47.